I think we're ready to go. I call up Case 19-2015, Egenera v. Cisco Systems. Mr. Bagatelle, whenever you're ready. Thank you, Chief Judge Brewster. May it please the Court. If I may, I'd like to start with the District Court's ruling that judicial estoppel barred Egenera from evoking Section 256B to correct inventorship. That ruling contradicted the plain language of Section 256B. It has no basis in precedent, and it should be reversed. Let me ask you, your first... I'm interrupting you, please. This is Sharon Prowse. Your first line of attack is that judicial estoppel can never apply. Am I understanding that correctly? Not quite. I would say judicial estoppel can never invalidate a patent where it can be corrected. I can theoretically imagine some circumstance... Okay, well let me give you that theoretical circumstance, hypothetically. What if, in this case, it had mattered when you got rid of the inventor during the IPR proceeding? What if getting rid of the inventor, as you did before the PTO, had a dispositive effect in terms of what prior art could be considered, and had a dispositive effect on the proceeding? Would that not then be sufficient to establish judicial estoppel for the changing of the inventor in a subsequent proceeding? No, it would not, because the statute is clear. It says, the error of omitting inventors or naming persons who are non-inventors shall not invalidate the patent in which such error occurred if it can be corrected. You can't invalidate for misnaming inventors if you can correct instead. There's just no limit. There's no time limit. There's no limit to one correction, no exception. If the reason the patent had survived, these claims had survived during the IPR proceeding, was in fact precisely related to the removal of Schuller from the proceeding, then your view is, you could get him removed for purposes of that proceeding in order to save the patent from prior art, and then bring him back, in this case, to save the patent for other reasons? Well, there's one limitation that we haven't talked about, and of course that's inequitable conduct. If someone deliberately misrepresents something to the PTO, there is a remedy for that, and that's going to be inequitable conduct. The patent can be declared unenforceable, but as long as you have made an error, that error can be corrected according to the plain language of the statute. This court's called it a savings provision, and it's repeatedly held that correction is mandatory whenever it's feasible. Stark says that. Panu says that. Lending Tree says that. No case says otherwise. Mr. Bagatelle, this is Judge Reina. So, reading the statute, and she uses the word if, if the patent can be corrected, give us an example of when it cannot be corrected. Well, there are a couple of examples where it cannot be corrected. It's basically when you can't or don't comply with the other requirements of Section 256B. In the old days, there was a requirement of without deceptive intention. That's gone after the AIA. Under the current statute, the court still has to be able to provide notice to and hear from all the parties concerned. Lending Tree actually dealt with an interesting circumstance where it might not have been possible. That was a case in which there had been a jury verdict, but the jury verdict didn't identify who the inventors were. It was something that the patent owner had waived, and the court remanded and said it might be impossible to correct in that circumstance because we don't know how to correct. That's not our case here. If Mr. Schulter is an inventor, then he's on, and if he's not an inventor, then he'll be off. I thought your argument was at least alternatively at least more limited in that here you didn't know there was assumption that this was not a means plus function claim. It was sort of a changed circumstance here with the court and this proceeding suddenly saying this is means plus function. You need to look at the spec and find the structure to support that, and that's where the necessity of having this inventor involved grew. Is that a fair statement of the case? That goes to the first prong of judicial estoppel, which is whether there were inconsistent arguments. Our position is that we've always argued that Mr. Schulter is not an inventor. We just argued that if the district court disagreed, then the remedy was correction rather than invalidation. That was a conditional argument in the alternative. In connection with that, we pointed out that we weren't arguing inconsistent facts. We were arguing inventorship, and that's a legal conclusion based on claim construction, which is itself a legal conclusion. That construction changed midway because no one had ever suggested that this term, logic to modify, was a means plus function construction. That was an intervening circumstance, and that's a classic justification for a change in position. But that goes to the first prong. It's whether or not he was an inventor of facts, which either he is or he is not. In one case, I think Mr. Rosencrantz told us, in one case you say he is not an inventor, and in another case you say that he is. How could those two positions not be mutually exclusive as we understand mutually exclusive? Well, because inventorship is a legal conclusion that depends on underlying facts and underlying legal issues, including claim construction. A genera determined that Mr. Schulter was not an inventor based on a plain language construction, which was all that had been asserted to that point. Cisco had never asserted any kind of means plus function construction. This whole idea of the VLAN proxy, it just hadn't come up. So that is, it's really a mixed question of law. It's not a fact. It is a legal conclusion. It's sort of like in the Supreme Court's cases, disability. Disability is ultimately a conclusion, and it depends on some underlying facts, like could you raise your arm over your head this morning? Whether you could raise your arm over your head this morning is a fact. In fact, inventorship is a legal conclusion that depends on both historical facts and on claim construction. In fact, claim construction, it defines the scope of the invention. That's how, that's why you need to know the claim construction in order to determine whether somebody has substantially contributed to that invention. This is Judge Reyna. I want to make sure I heard you correctly. Are you abandoning what I thought was your preliminary argument that Section 256B actions can never be subject to judicial estoppel? No. All I was trying to get to, my argument is that you cannot use Section 256B to invalidate a patent. I mean, that is when, that's your preliminary argument. Yes. I'm only making a theoretical point that if you had a situation, we have said in our brief, for example, that other equitable doctrines can limit correction of inventorship as long as it's short of... Just for our purposes and understanding what your position is so that we can deal with it appropriately, you're no longer advancing the argument that Section 256B actions can never be subject to judicial estoppel. If I may explain, the answer is almost never. And it would be an extremely rare circumstance in which judicial estoppel would not result in an invalidation. And let me just give the example. It may be far-fetched, but let's say that a person who's not named on a patent is in a divorce proceeding. And in that divorce proceeding, he says, you know, I was not an inventor on this patent. It's not part of the marital estate. I have no interest in this patent. And then he comes back years later and tries to file a correction of inventorship claim. He could be judicially estopped, but that would not be a problem under the first sentence of Section 256B. I understand where you're headed. I just wanted to clarify the word never. I mean, you argue that it can never be subject to judicial estoppel. Now you're saying, well, it can be. It never can except for certain circumstances. No, no, no. I want to be very clear. It can never result in invalidation when you can correct. We are arguing the plain language of 256B. You cannot invalidate if you can correct. If you're not trying to invalidate the patent, then that sentence is not triggered. Let me piggyback on what Judge Rayna, I think, is trying to clarify here. My understanding, tell me if I'm incorrect. Yes, that is what your lead argument is. However, your alternative argument is even assuming judicial estoppel were to be applied, it is not applicable to the circumstances of this case. Correct. So you do have an alternative or a fallback position in that regard, right? We certainly do. We think you should decide this case based on the plain language of the first sentence of Section 256B. And that is you can't invalidate because you can correct in these circumstances. If you disagree and say that judicial estoppel could potentially overcome Section 256B, we argue that the district court legally erred and abused its discretion, more generally, in applying judicial estoppel on these facts. Okay, let me go back. And we have made arguments under all three factors of the New Hampshire versus Maine test in that regard. But you don't reach those issues if you agree with us about the statutory language. Can I just ask you another hypothetical? Assuming we are applying the factors of judicial estoppel and the one we talked about a little bit earlier about how it was almost an unforeseen or intervening event to change the claim construction and get you into means plus function land. Would that apply if, you know, we all know that in the, at least in the old days, the AIA used a broadest reasonable interpretation. And we all knew that district courts did not. Would that not, that would be a different circumstance, would it not, than a means plus function which you really had arguably no basis for knowing was going to end up being the interpretation. In other words, people know at the get-go that there are two different standards, the BRI and regular claim construction standards. Do you understand my question? Not entirely. I agree that there could be a broader interpretation and a narrower interpretation. So changing the inventorship based on the difference between where you are in BRI land in one place and then you get to change it back again when you're not in BRI land, that would be different than your case. We had no reason to necessarily anticipate that a means plus function analysis was going to be applied. That's true, absolutely. There could be cases in which the BRI would make a difference. You know, this was a situation where the PTO is supposed to apply 112, that's in Ray Donaldson and Embank, a case of this court from 1994 or so. So we haven't relied on that. The only thing we have said about the BRI standards is maybe that explains why Cisco didn't ask for a means plus function construction. Our only point is that our construction, the plain language construction was certainly reasonable based on everything that had been argued or presented to that date, either in the district court or in the PTAB. What's left of this case if we were to not apply judicial estoppel here in concluding that the district court abused its discretion, forget on what basis, goes back, you haven't done the infringement portion yet on this, right? That's correct. Either infringement or validity over prior art or inequitable conduct for that matter. That's right. Inequitable conduct, yes. Everything. I mean, basically this case was short-circuited as a result of this late rising inventorship issue. And frankly, it's been somewhat of a windfall. I mean, what happened in this case was the district court invalidated the entire patent because one inventor who worked for Regenera, the same company, contributed to one limitation that appeared in just half of the claims. That's a pretty stunning result. Especially in light of the statute that says you shall not invalidate when it's correctable. I think I heard the bell go off, so perhaps I should reserve the rest of my time for rebuttal. Thank you very much. We'll hear from Mr. Rosencrantz and reserve your rebuttal. Thank you, Your Honor. May it please the court, Josh Rosencrantz representing Cisco. Your Honor, this case has nothing to do with an innocent inventor who makes a mistaken call on a close and complex issue of inventorship based upon a specific claim construction. Just look at the findings that the district court made, and I'll cite three or four. First, at 83 at the top, the court said it, quote, does not credit Schulter's and the other inventors' post hoc protestations on inventorship. 63, note 3, the court said, quote, the court finds unconvincing Schulter's disavowal. Page 34, note 7, it said this was, quote, unlikely to qualify as a, quote, unintentional deviation from the truth, which means that it was likely to be an intentional untruth. Then two more at 83. Mr. Rosencrantz, this is Judge Reynolds. Just a quick question. What's the prejudice here? How is Cisco harmed by this? Well, Your Honor, the first I would say that unfair advantage under First Circuit law is not a requirement, although it's very powerful. But the prejudice here is that there's no dispute that the whole point of disavowing Schulter's inventorship was to claim an earlier priority date for litigation advantage. Taking Schulter off the patent strips Cisco of a powerful argument that a genera could not swear behind the prior art. And worse... Yes, I'm aware that we have inconsistent positions, but where's the prejudice to you? Well, that's what I'm saying, Your Honor. Where's the unfair advantage to you? The unfair advantage to us was twofold. First, that when a genera did this, it took away a powerful argument that we had before both the district court and the PTAB about swearing behind, and worse, by persuading the PTO to remove Schulter from the patent, a genera secured a judicial presumption that Schulter's omission was valid. And let me just emphasize... But to no practical effect. But it had no practical effect on you. I mean, hypothetically, it could have led to that, but the PTO never even instituted on the IPR. Well, so, Your Honor, it had no practical effect for the district court because they got caught, and the First Circuit has said very powerful... No, but what was the practical effect of removing the inventor in connection with the IPR proceed? There turned out to have been no effect. But unfair advantage is about seeking an unfair advantage, not about securing one. In any judicial estoppel case, it will always be the case that the patentee got caught. If he had not been caught here, if the patentee had not been caught here, they would have had a powerful argument in the district court about inventorship and swearing behind. This is general. What about the factor that the party must have succeeded in persuading a court to accept the earlier position? How can that possibly apply here, where the PTO never accepted the position on inventorship? Your Honor, I disagree. Jennifer does not dispute that the PTO accepted its prior position on who the inventor was. The commissioner of patents... What I mean is, there was no... I'm going to the same point that Chief Judge Crouse made, but under a different factor, which is that the PTO did not rely on the inventorship in its determination of swearing behind. Instead, it assumes that the patent owner was unable to swear behind and made a determination that the prior didn't disclose the claim elements. Yes, Your Honor. I understand the point Judge Stoll, and the answer is that the two positions that triggered judicial estoppel was the first use of 256A before the commissioner of patents to change inventorship, and then the second use before the district court. Those were the inconsistent positions, and the PTO accepted the inventorship position. And I was talking earlier about the findings that the district court made, and I just want to mention that there were two more. The court called out the, quote, inventor's historical revisionism for litigation advantage. That's at page 83. And the second one, the next one, is also at 83, and I quote, Smith felt unease over whether what they were doing was right. Now, the questions that the court is getting at go to the various factors, but let's bear in mind that the various factors are all about giving the district court discretion to figure out whether a party is playing fast and loose with multiple decision makers. And the district court was uniquely situated to watch a generous positions play out simultaneously before the court, the commissioner of patents, and the PTAP, and then decide whether they were inconsistent in a way that implicated the integrity of the decisions of those three tribunals. This case was filed in 2016. A general went to the PTO in 2017 while the case was pending in the district court. It was all happening while claim construction briefing was underway. The court heard multiple inventors try to explain why that was a reasonable position and said that it, quote, could not credit their account. The court in Cisco conducted a whole Markman hearing without either one of them having any idea that inventorship had already changed. The court was perfectly justified in saying, in essence, I gave you the opportunity to justify your previous position. I'm not now going to let you end by asking me to undo the relief that you secured from the PTO. Under first circuit law, this court cannot reverse unless it is, quote, left with a definite and firm conviction that the court below committed a clear error of judgment. And as Chief Justice Brooks pointed out... What about the consideration, then, going on to your argument that you're making right now, the Supreme Court in New Hampshire that explained, with respect to judicial estoppel, that the question is whether a party is seeking that would derive an unfair advantage or impose an unfair detriment. You still haven't answered my question. What's the unfair advantage or the unfair detriment to you? You got the patents invalidated. What happened in this case is unfair? Well, Your Honor, we got the patents invalidated because of the application of judicial estoppel. And so you take that out and we're proceeding with a litigation in which a party... I think that's what we're looking at as to whether that application of judicial estoppel was correct or not. And one of the elements in that question, in deciding that question, is whether a party, the party that's seeking to assert an inconsistent position derives some sort of unfair advantage or it's imposed on you, Cisco, an unfair detriment. And you still, in my mind, haven't shown that. Your Honor, I have two answers to that. First, under First Circuit law, and I'm citing alternative system concepts, and I quote, while it is not a formal element of a claim of judicial estoppel, courts frequently consider that third factor, which is unfair advantage. And second, First Circuit law is clear. That same exact case says that what triggers judicial estoppel is seeking an unfair advantage, not securing one. And multiple cases from the First Circuit underscore that. Again, alternative concepts. The court says, and I quote, in a prototypical case, judicial estoppel applies when, quote, a party has adopted one position, secured a favorable position, and then taken a contradictory position in search of legal advantage. And then gateway, also in the First Circuit, estoppel applies even though, after, quote, the defendants raised the issue of judicial estoppel for the first time, the plaintiffs, quote, filed in the bankruptcy court a report of unpaid Chapter 11 obligations in which they identified their claims. In other words, they corrected the unfair advantage. Securing an unfair advantage is really just circular because the party will never secure the unfair advantage once they are caught and judicial estoppel applies. Mr. Rosenkranz, before your time runs out, could I ask you to just briefly address what is Mr. Bagatelle's main point, which is judicial estoppel does not apply at all in these, or apply, does not apply at all in these circumstances. And you make an argument in your brief about the strong common law background. So, could you want to address that? Yes, of course, Your Honor. Let me just, I'll pick up on Chief Judge Prost's hypothetical. If a general were right about how 256 works, then the statute would override every rule governing litigation no matter how egregious a party's gamesmanship is. A general admits that 256 is not definitive because they say there's always equitable estoppel. The statute doesn't distinguish between equitable estoppel and judicial estoppel. A patent under a general's view, a patentee could override equitable estoppel, unclean hands, laches, race judicata, and all the other common law doctrines as long as what they're trying to do is save a patent. But since a general admits that 256 is not an all-or-nothing proposition, it can't possibly claim that judicial estoppel is some particular exception to the long list of common law doctrines against which 256 was adopted. This Court has repeatedly held that petitions or motions under 256 are subject to both equitable estoppel and laches. And if anything, this Court has rejected a generous one-way ratchet in Stark 1. And again, by the way, in the lending tree case that a general recites. I do want to address one point that was made about the inconsistent positions. And Chief Judge Post pointed this out. The inconsistency, as I was saying earlier, is in the two opposite uses of Section 256. A general first sought to remove Shulter and then tried to use the same statute to add him back. And again, the District Court was the one that was best situated on an abusive discretion standard to address all of the questions that this Court has asked about the acceptance of the prior position, about the inconsistency, about the unfairity. The means plus function issue only arose in connection with the District Court's adjudication. And there's a presumption in our case law, if you don't use the word means, I know Williams tinkered with that a bit, there's no means plus function. It's a legal question. Claims obstruction is a legal question. Why is Mr. Bagatelle not correct that this was an unforeseen circumstance? There was no bad faith. It wasn't playing fast and loose. They didn't come to the District Court advocating a means plus function position. But this is what the District Court concluded. And, you know, it was not an easy call. We had a multi-day trial with respect to these issues. So why isn't that a circumstance which takes it out of the phrase you use, this fast and loose kind of thing? Well, so the answer, Your Honor, is that if a genera had ever argued to the District Court that the claim construction was an intervening change of circumstances, the court would have been well within its discretion to reject the argument for two reasons. First, if the claim construction order really had been a game changer, it would have changed the game. A genera would have conceded Schulter's inventorship under that construction and asked the court then and there to change inventorship back. Instead, it continued to insist that Schulter's removal was proper. And second, the argument depends on a fiction that the inventors critically examined the claims and devised a reasonable approach based upon a particular claim construction, but the District Court found exactly the opposite. These are fact findings. Manka, the CEO, did not say he relied on a particular claim construction. The rest of the inventors did not even review any relevant documents or, in some cases, did not even form a, quote, independent belief about inventorship when they filed their sworn statements. Claim construction cannot possibly have played a role in those uninformed filings. You can't override an equitable determination based on a hypothesis that it would have been reasonable to harbor a view that no one held, no one even claimed they held, and no one said that they ever cared about. If there are no further questions, let me just pause. I think that's it. No further questions. Thank you very much. We'll hear from you at the bell on your button. I thank the court for its attention. Mr. Bagatelle? Yes. If I may, I'd like to respond to several of the points that Mr. Rosenkranz has made. First of all, he said that there was something improper about Igenera trying to swear behind and that we were seeking unfair advantage. The fact of the matter is, Peter Shulter, even assuming he was the inventor, he invented before Groszner anyway. We've explained that at page six of our reply brief. There was no sort of illicit motive. Igenera had antedated Groszner no matter what. The next thing he relies on is the district court's findings. Basically, it comes down to one paragraph at the end of the district court's decision on inventorship in which he says he's not crediting the Igenera witnesses' testimony. He uses the word historical revisionism precipitated by an attempt to swear behind the art. I'm not exactly sure what he meant by historical revisionism, but that's what a request to correct inventorship is. You say you made a mistake in listing the inventors and you're trying to change it. That's what the nature of 256 is. If he was making a factual finding about Shulter's contributions, we're stuck with that factual finding, but that just means that we were mistaken when we concluded that he wasn't an inventor. It doesn't mean we aren't entitled to correct the error. As to the investigation, he thought we should have been more fulsome in investigating before removing Mr. Shulter. Well, actually, Mr. Menke spent a lot of time with other people at Igenera and lawyers looking at this, and they determined that all of the steps that were included in the claims had been invented by September 30th. It didn't matter what Mr. Shulter had done after that because it appeared on September 30th. As far as the district court's findings, if Mr. Rosenkranz were correct, the district court would have found this case exceptional. It didn't. It denied Cisco's motion for attorney's fees. The district court did not find that Igenera engaged in some sort of grand, horrible conspiracy to mislead everybody. That's just in fiction. And these allegations are still interwoven in the inequitable conduct, which has not been reached yet by the court, right? That's true. The district court could reach that issue on remand. There were summary judgment motions pending on a lot of issues, and the district court denied them without prejudice because it focused on this inventorship issue, and that's what they went to trial on in the space of four weeks over Christmas. We were told, here's a new trial you're going to be having on this one issue, and that's why we focused on the trial at that time period. Mr. Rosenkranz talks about, you know, equitable estoppel and latches. Equitable estoppel and latches and judicial estoppel, all of those common law doctrines can be used to determine whether somebody who's seeking a correction of inventorship should be added. The only limitation we are arguing is that you cannot invalidate the patent in which the error occurred if it can be corrected as provided in section 256. That is where you have the inconsistency with the statute. Cisco has relied on Astoria versus Salomino, which actually held that administrative estoppel could not apply in those circumstances, even though it was a common law doctrine and that was well established. You look at the statute and see whether it implicitly or explicitly is inconsistent with the common law doctrine. Here, to the extent that judicial estoppel would result in invalidation, it cannot apply. If it's short of that, it can be an equitable limitation. There's no inconsistency with this court's equitable estoppel and Latch's cases. I think he was speaking about Mr. Manka and whether Mr. Manka relied on a claim construction. That's actually in his declaration at appendix 237. He relied on the plain language, just as Cisco did. I think we heard the bell. We thank both sides. We understand this is an unusual circumstance. We appreciate your cooperation. The case is submitted. Thank you.